MESKILL, Circuit Judge:
 

 This case concerns the scope of 11 U.S.C. § 525 (1982),
 
 amended by
 
 Pub.L. No. 98-353, § 309, 98 Stat. 333, 354 (1984) (section 525), the Bankruptcy Code provision that prohibits discrimination against discharged debtors. Defendant appeals, from a judgment of the United States District Court for the Eastern District of New York, Weinstein,
 
 C.J.,
 
 ruling that section 661(6)(b) of New York’s Education Law, N.Y. Educ.Law § 661(6)(b) (McKinney Supp. 1984), violates section 525 and ordering defendant to process plaintiff’s guaranteed student loan application. Because we believe that the bankruptcy court and the district court extended the scope of section 525 beyond the clear bounds of its language, we reverse.
 

 Background
 

 The relevant facts are undisputed. Plaintiff Mart i.l.v.e.s. Goldrich obtained a student loan in 1969 from First National
 
 *29
 
 City Bank. The loan was guaranteed by defendant New York State Higher Education Services Corporation (NYSHESC), a corporation authorized by New York Education Law to administer state financial aid programs and guarantee loans for students who meet certain eligibility criteria. N.Y. Educ.Law § 651
 
 et seq.
 
 (McKinney Supp. 1984). Goldrich did not repay the loan when it matured in 1971 and it was declared in default. In 1972 NYSHESC paid the amount of the default to the bank.
 

 In 1978 NYSHESC obtained a judgment against plaintiff. Approximately two years later Goldrich filed for relief under Title 11, listing the unpaid student loan as one of his outstanding debts. On April 21, 1981 Gold-rich was discharged from his dischargeable debts, including the unpaid student loan.
 

 Both before and after his discharge, Goldrich sought additional student loan funds from various New York banks. Although his applications were accepted by the banks, NYSHESC refused to guarantee payment of any additional student loans. NYSHESC relied on N.Y.Educ.Law § 661(6)(b), which provides in pertinent part: “Any student who is in default in the repayment of any student loan, the payment of which has been guaranteed by the corporation ... shall not be eligible for any ... student loan so long as such default status or failure to comply continues.”
 

 Goldrich moved to reopen his bankruptcy proceeding in October 1983, seeking to institute an adversary proceeding for injunc-tive and monetary relief from NYSHESC’s repeated denials of loan guarantees. In January 1984, the bankruptcy court reopened the proceeding. Plaintiff, appearing
 
 pro se,
 
 subsequently filed a complaint alleging that NYSHESC’s actions violated section 525 and the teaching of
 
 Perez v. Campbell,
 
 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). The bankruptcy court, Goetz,
 
 J.,
 
 held that it had jurisdiction over the suit, that the Eleventh Amendment barred an award of monetary damages but not injunctive relief and that section 661(6)(b) unconstitutionally discriminated against former bankrupts by conditioning the award of student loans on the payment of discharged debts. 45 B.R. 514 (Bkrtcy.E.D.N.Y.1984). Summarizing previous decisions interpreting section 525 and
 
 Perez,
 
 the court held that extensions of credit are included within the scope of section 525’s mandate against discrimination concerning “a license, permit, charter, franchise, or other similar grant.” The court also ruled that Goldrich “may probably be awarded attorney’s fees and costs despite the bar of the Eleventh Amendment.” 45 B.R. at 523. Chief Judge Weinstein accepted the conclusions of the bankruptcy court and ordered NYSHESC to process plaintiff’s student loan application without regard to the eligibility provisions of section 661(6)(b). The court also awarded plaintiff costs and attorney’s fees. This appeal followed.
 

 At oral argument we questioned whether the State of New York had been offered the opportunity to intervene before the district court pursuant to 28 U.S.C. § 2403(b) (1982). In the absence of evidence of such an offer in the record, we advised the office of the Attorney General that the constitutionality of a state statute was in question. The Attorney General responded by letter indicating that he accepted the views expressed in NYSHESC’s brief.
 

 DisCussion
 

 NYSHESC contends that the lower courts erred in interpreting the statutory language to include extensions of credit within the scope of the statute’s enumeration. Plaintiff argues that the “fresh start” policy embodied in section 525 is served by preventing creditors from considering past defaults in making decisions concerning future extensions of credit. We disagree with plaintiff and the lower courts as to the prohibition against consideration of prior bankruptcies in credit decisions because we believe that the language of section 525 may not properly be stretched so far beyond its plain terms. Therefore, we reverse the decision of the district court.
 

 Section 525 states in pertinent part:
 

 
 *30
 
 [A] governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against ... a person that is or has been a debtor under this title ... solely because such bankrupt or debtor is or has been a debtor under this title ..., has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title.
 

 The legislative history indicates that section 525 “codifies the result of
 
 Perez v. Campbell,
 
 402 U.S. 637 (1971).” S.Rep. No. 989, 95th Cong., 2nd Sess. 81,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5787, 5867 (hereinafter S.Rep.). In
 
 Perez,
 
 the Supreme Court held that a state financial responsibility law conditioning reinstatement of a driver’s license after an accident on repayment of a tort judgment, despite discharge of that debt in bankruptcy, unconstitutionally conflicted with the fresh start policy of the federal bankruptcy laws.
 
 Perez,
 
 402 U.S. at 652, 654, 91 S.Ct. at 1713. In codifying this result, Congress extended the protection against discrimination in the awarding of a license to include a “permit, charter, franchise, or other similar grant.” The scope of protection represented by those undefined terms has not yet been clarified.
 

 Significantly, section 525 does not promise protection against consideration of the prior bankruptcy in post-discharge credit arrangements. We believe that this omission was intentional. A credit guarantee is not a license, permit, charter or franchise; nor is it in any way similar to those grants. Had Congress intended to extend this section to cover loans or other forms of credit, it could have included some term that would have supported such an extension. We are reluctant to probe beyond the plain language of the statute. Although the exact scope of the items enumerated may be undefined, the fact that the list is composed solely of benefits conferred by the state that are unrelated to credit is unambiguous. Congress’ failure to manifest any intention to include items of a distinctly different character is also unambiguous. In the absence of ambiguity, no further inquiry is required.
 
 Garcia v. United States,
 
 — U.S. —, —, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984);
 
 Rubin v. United States,
 
 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981);
 
 United States v. Payden,
 
 759 F.2d 202, 204 (2d Cir.1985);
 
 United States v. Holroyd,
 
 732 F.2d 1122, 1125 (2d Cir.1984).
 

 This conclusion would ordinarily end our analysis, for no resort to legislative history is necessary where the statutory language clearly resolves the dispute.
 
 See United States v. Oregon,
 
 366 U.S. 643, 648, 81 S.Ct. 1278, 1280, 6 L.Ed.2d 575 (1961). However, Judge Goetz’s reliance on legislative history in reaching her conclusion, despite her agreement with the plaintiff as to the meaning of the language, prompts us to comment on that history.
 

 Congress intended to allow courts to continue “developing the
 
 Perez
 
 rule.” S.Rep. at 81, 1978 U.S.Code Cong. & Ad.News at 5867. “[T]he section is not exhaustive. The enumeration of various forms of discrimination against former bankrupts is not intended to permit other forms of discrimination.”
 
 Id.
 
 This statement, taken alone, might support plaintiff’s case. However, the Senate Report continues:
 

 This section permits further development to prohibit actions by governmental or quasi-governmental organizations that perform licensing functions, such as a State bar association or a medical society, or by other organizations that can seriously affect the debtors’ livelihood or fresh start, such as exclusion from a union on the basis of discharge of a debt to the union’s credit union.
 

 Id.
 
 While Congress may have intended to allow expansion of the scope of protection described in section 525, it clearly also intended that such expansion would be limited to situations sufficiently similar to
 
 Perez
 
 to fall within the enumeration. The
 
 *31
 
 extension of credit is manifestly different from both examples given in the Senate Report: licensing and exclusion from a union. The fact that expansion must be permitted within the bounds of the statute’s undefined terms may not be interpreted to require similar amplification outside of those bounds.
 
 Cf. Harrison v. PPG Industries,
 
 446 U.S. 578, 588, 100 S.Ct. 1889, 1895, 64 L.Ed.2d 525 (1980) (under rule of
 
 ejusdem generis,
 
 general words following specific enumeration apply only to items like those listed);
 
 Carlyle Compressor Co. v. Occupational Safety & Health Review Commission,
 
 683 F.2d 673, 675 (2d Cir.1982) (same).
 

 Our interpretation finds further support in another statement in the Senate Report: “[Section 525] does not prohibit consideration of other factors,
 
 such as future financial responsibility or ability,
 
 and does not prohibit imposition of requirements such as net capital rules, if applied nondiscriminato-rily.” S.Rep. at 81, 1978 U.S.Code Cong. & Ad.News at 5867 (emphasis added). Congress thereby acknowledged the possibility that a prior bankruptcy could be considered in evaluating financial responsibility as long as that consideration was done in a nondiscriminatory fashion. Where the decision at issue concerns a post-discharge application for credit, evaluation of financial responsibility is crucial. As long as the purpose of that examination is not to coerce the debtor into paying or reaffirming a discharged debt, the examination is permissible.
 

 The companion House Report expresses a similar view.
 
 See
 
 H.R.Rep. No. 595, 95th Cong., 2nd Sess. 165,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5963, 6126. After noting that the statute prohibits discrimination solely on the basis of bankruptcy, the Report continues:
 

 The prohibition does not extend so far as to prohibit examination of the factors surrounding the bankruptcy, the imposition of financial responsibility rules if they are not imposed only on former bankrupts, or the examination of prospective financial condition or managerial ability.... [I]n those cases where the causes of a bankruptcy are intimately connected with the license, grant, or employment in question, an examination into the circumstances surrounding the bankruptcy will permit governmental units to pursue appropriate regulatory policies and take appropriate action without running afoul of bankruptcy policy.
 

 Id.
 

 Section 661(6)(b) of New York’s Education Law is not intended to coerce payment of defaulted student loans. Instead, the state law is merely designed to protect the state coffers against repeated defaults, a permissible purpose. Moreover, the language of section 661(6)(b) indicates that it applies uniformly to all students who fail to repay student loans, whether they declare bankruptcy or not. The record contains no evidence of discriminatory application.
 

 Finally, we note that Congress rejected a flat prohibition on any form of discrimination. S.Rep. at 81, 1978 U.S.Code Cong. & Ad.News at 5867. This fact, while not dispositive, at least supports our conclusion that Congress chose its words carefully. Recognizing Congress’ express intent that the courts “continue to mark the contours of the antidiscrimination provision,”
 
 id.,
 
 we decline to extend that provision so far beyond the limits set by Congress. We find no conflict between the terms of the statute and the relevant legislative history.
 
 Cf. Aaron v. SEC,
 
 446 U.S. 680, 700, 100 S.Ct. 1945, 1957, 64 L.Ed.2d 611 (1980).
 

 For the reasons stated above, we hold that N.Y.Educ.Law § 661(6)(b) does not conflict with section 525 of the Bankruptcy Code. Our disposition makes it unnecessary for us to consider the district court’s award of attorney's fees to plaintiff.
 
 [1]
 
 The
 
 *32
 
 district court’s judgment in favor of plaintiff is reversed.
 

 [1]
 

 . In view of our conclusion as to the clear meaning of the statutory language, we need not discuss the cases on which the lower courts relied:
 
 In re Rose,
 
 23 B.R. 662 (Bkrtcy.D.Conn.1982), and
 
 In re Marine Electric Railway Prod-acts Division, \1
 
 B.R. 845 (Bkrtcy.E.D.N.Y.1982). Both cases analyzed the legislative history and concluded that section 525 should be broadly construed.