In re Michael John ELTER and Joyce Margaret Elter, Debtor(s).

Michael John ELTER, Plaintiff,

v.

GREAT LAKES HIGHER EDUCATION CORPORATION, Defendant.

Bankruptcy No. 88–00381.
Adv. No. 88–0312.

United States Bankruptcy Court,
E.D. Wisconsin.

Jan. 13, 1989.

Robert A. Kennedy, Jr., Crandon, Wis., for plaintiff.

Lloyd J. Blaney, Dew, Blaney & Olson, Madison, Wis., for defendant.

## DECISION

M. DEE McGARITY, Bankruptcy Judge.

## PROCEDURE

This case comes before the court upon plaintiff/debtor's motion for summary judgment. The parties agreed that there are no genuine issues of material fact, and the case is appropriate for summary judgment under Bankruptcy Rule 7056. Although the defendant did not file a cross motion for summary judgment, it is proper for the court to fully dispose of the matter as if it had. *Moore's Manual, Federal Practice and Procedure,* § 17.13 at pp. 17–64 to 67. Based upon the agreement as to facts and the briefs of the parties, the court concludes that the defendant is entitled to summary judgment as a matter of law and will dismiss the plaintiff's complaint.

## FACTS

Debtors, Michael John Elter ("Elter") and Joyce Margaret Elter, filed a voluntary Chapter 7 joint bankruptcy petition on February 1, 1988. They received discharges on April 26, 1988. As part of that proceeding, Elter received a determination from the bankruptcy court that a student loan owed to the defendant's predecessor was discharged.

After his discharge, Elter applied to UW–Oshkosh for a guaranteed student loan for graduate studies. The defendant's predecessor was the state agency responsible for authorizing the making of student loans which are guaranteed by the state and which in turn are guaranteed by the federal government through the Department of Education. His application was denied. The reason cited by the state agency was his default on the previous student loan that had been discharged in bankruptcy.

Elter's wife, on the other hand, applied for and received a student loan after the bankruptcy. Although she had been a joint debtor with Elter, it appears that she had no previous student loans either discharged or in default.

Elter brought this adversary proceeding for injunctive relief to compel the defendant to grant his loan request, to prohibit future discrimination against him in the granting of student loans, and for money damages for defamation. The defamation is claimed on account of defendant's communication with UW–Oshkosh that Elter was denied a loan because he was in default of the discharged loans. Defendant claims that Wis.Stat. § 39.32(3)(g)[1] prohibits it from approving the plaintiff's application as it only authorizes the defendant to make or guarantee loans if, among other things, the student is not in default on previous loans or has made satisfactory arrangements for payment. The defendant acknowledges that no consideration other than the default was relevant to the denial of Elter's application. Indeed, the fact that Elter's wife received a student loan after bankruptcy confirms that it is the default and not the bankruptcy that resulted in the denial.

## DISCUSSION

The plaintiff argues that discharged student loans must be disregarded in determining eligibility for subsequent guaranteed loans. In support of this contention he cites 34 C.F.R. § 682.201(e)(4)[2] relating to insurance of student loans by the Department of Education. That regulation states that in determining eligible borrowers for federal insurance purposes, loans previously made to the borrower are not considered in default if they have been discharged in bankruptcy. 34 C.F.R. § 682.201(e)(4). Since the defendant admittedly does consider the default on these loans in determining eligibility, plaintiff argues that such consideration and the resulting denial constitute impermissible discrimination under 11 U.S.C. § 525(a).[3]

1. The student is not in default on any previous loan or the board has determined that the student has made satisfactory arrangements to repay the defaulted loan.
Wis.Stat. § 39.32(3)(g).

2. The Secretary does not consider either a loan that is discharged in bankruptcy or a defaulted loan that is paid-in-full after default to be in default for purposes of this section.
34 C.F.R. § 682.201(e)(4).

3. Except as provided in the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499a–499s), the Packers and Stockyards Act, 1921 (7 U.S.C. 181–229), and section 1 of the Act entitled "An Act making appropriations for the Department of Agriculture for the fiscal year ending June 30, 1944, and for other purposes," approved July 12, 1943 (57 Stat. 422; 7 U.S.C. 204), a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargea-

The defendant points to Wis.Stat. § 39.32(3)(g) which provides that the agency may make or authorize guaranteed student loans if the student is not in default on previous student loans or if the student had made satisfactory arrangements for payment. The defendant interprets Wis. Stat. § 39.32(3)(g) as prohibiting it from insuring a loan to plaintiff on account of his continued default, notwithstanding the discharge of the loans in bankruptcy. There is no state statute similar to 34 C.F.R. § 683.201(e)(4) that limits the definition of "default." This results in the plaintiff being ineligible under the state statute, even though he may be eligible for a guaranteed loan under the federal regulations.

The defendant makes clear that it is not attempting to collect a discharged debt; it is only refusing to authorize future credit.

 The threshold question is whether 11 U.S.C. § 525(a) applies to the issuance of a guaranteed student loan after discharge of another student loan. It is agreed that the refusal by the defendant, which is a "governmental unit," to authorize the loan is "solely because" the debtor "has not paid a debt that is dischargeable" in bankruptcy. 11 U.S.C. § 525(a). The refusal is unquestionably discriminatory in that Elter was treated differently from his wife who had not discharged a student loan. Therefore, if 11 U.S.C. § 525(a) applies, then defendant's refusal is prohibited. However, this court is not persuaded that 11 U.S.C. § 525(a) extends to the future granting of credit for a student loan and, accordingly, dismisses the complaint.

Section 525(a) of Title 11 prohibits discrimination on account of bankruptcy by a governmental unit with respect to a "license, permit, charter, franchise or other similar grant." This section is a codification of *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), which held that a state may not deny a driver's license to a citizen who had discharged an unpaid tort claim from an automobile accident. The Supreme Court decided that the supremacy clause of the United States Constitution will not permit a state to have standards for the issuance of driver's licenses to persons who have no tort liability which are different from those whose tort liability has been discharged in bankruptcy. Even though the state in enacting the statute had a legitimate purpose completely unrelated to penalizing its citizens for obtaining relief under the Bankruptcy Act, the actual effect was to penalize them. This made the statute invalid. *Id.*

After 11 U.S.C. § 525(a) (then 11 U.S.C. § 525) was enacted, a Pennsylvania statute somewhat similar to the statute invalidated by *Perez* was also declared invalid. *Henry v. Heyison*, 4 B.R. 437 (E.D.Pa.1980). In order to keep their drivers' licenses, drivers who had incurred tort liability were required by that statute to provide insurance or other proof of financial responsibility. The effect was to deprive a debtor of one of the benefits of his or her discharge by requiring either the expense of insurance or the relinquishment of driving privileges. *Id.* at 441, citing *Perez, supra.* The court also discussed the House and Senate reports that accompanied the enactment of the antidiscrimination prohibitions. The purpose of 11 U.S.C. § 525(a) was to require governmental units, when issuing a license, permit, charter, franchise or similar grant, to treat debtors in the same manner as its citizens who had never incurred the liability. *Id.* at 442.

A driver's license is obviously a "license" to which 11 U.S.C. § 525(a) would apply. A building contractor's license has also been found to be subject to the requirement that the state not penalize a person who has invoked his rights in bankruptcy. *Grimes v. Hoschler*, 12 Cal.3d 305, 115 Cal.Rptr. 625, 525 P.2d 65 (1974) (following *Perez*). A similar result would no doubt have occurred in *Grimes* under 11 U.S.C. § 525(a). Since the list of state controlled privileges covered by the statute is not exhaustive, it has also been found that refusal of a state school to provide a student with a transcript after discharge of

ble in the case under this title or that was discharged under the Bankruptcy Act.

11 U.S.C. § 525(a).

student loans is also prohibited. *In re Heath*, 3 B.R. 351 (Bankr.N.D.Ill.1980) (university's refusal to release transcript to debtor under confirmed Chapter 13 plan also violated 11 U.S.C. § 362(a)(6)); *In re Ware*, 9 B.R. 24 (Bankr.W.D.Mo.1981) (university cannot withhold transcript of Chapter 13 debtor); *Lee v. Board of Higher Education in the City of New York*, 1 B.R. 781 (S.D.N.Y.1979) (university cannot withhold transcripts of students who discharged loans); compare *Johnson v. Edinboro State College*, 728 F.2d 163 (3rd Cir. 1984) (college may refuse to release transcript of student with nondischargeable student loan); *Girardier v. Webster*, 563 F.2d 1267 (8th Cir.1977) (private college may withhold transcript of student who discharged student loans).

The plaintiff contends that 11 U.S.C. § 525(a) should also extend to the issuance of student loans. There is case law to the contrary. After examination of the legislative history of 11 U.S.C. § 525(a), the Second Circuit Court of Appeals in *In re Goldrich*, 771 F.2d 28 (2nd Cir.1985), concluded that the term "or other similar grant" did not include future extensions of credit. Congress had rejected a flat prohibition against all forms of discrimination on account of bankruptcy. If it had wanted to include the granting of credit in the list of prohibited acts, it could have done so. *Id.* at 30–31. The state is allowed to assess future financial responsibility, according to both House and Senate reports. *Id.* at 31. Therefore, a New York statute having provisions similar to the applicable Wisconsin statute was found to be valid.

A Pennsylvania regulation, with substantive similarities to Wis.Stat. § 39.32(3)(g), concerning the eligibility requirements for granting student loans was not invalidated in *In re Richardson*, 27 B.R. 560 (E.D.Pa. 1982). The bankruptcy court had found that 11 U.S.C. § 525(a) applied to granting of student loans after discharge of other student loans. The district court stated that 11 U.S.C. § 525(a) allows inquiry into financial responsibility, and the regulation could be interpreted to be consistent with the Bankruptcy Code. *Id.* at 564. *See also* 3 *Collier on Bankruptcy* (15th ed. 1988)

¶ 525.02 at p. 525–6. There were also independent reasons apart from the bankruptcy of that particular debtor to deny a loan. Since the independent reasons existed, it was not necessary to invalidate the regulation nor to overturn the bankruptcy court's determination that 11 U.S.C. § 525(a) applied. The finding concerning the applicability of 11 U.S.C. § 525(a) was not necessary to the result, and this court is not persuaded by its reasoning.

*In re Rose*, 23 B.R. 662 (Bankr.D.Conn. 1982), cited by the plaintiff, does not entirely support his contention that 11 U.S.C. § 525(a) should be expanded to include the making of student loans. The *Rose* court found that 11 U.S.C. § 525(a) applied to state financed home mortgages. However, the court also found that there were reasons unrelated to bankruptcy that resulted in the denial of the debtor's financing. Therefore, the denial was not "solely" because of the bankruptcy. Again, the finding concerning 11 U.S.C. § 525(a) was not necessary to the result.

State assistance in the payment of home mortgages was likened to a "grant" in *In re Watts, et al.*, 93 B.R. 350 (E.D.Pa.1988). In that case, the debtors had been receiving or were approved to receive payments from the state that were sent directly to their mortgagees when, for reasons beyond their control, they were unable to keep up payments. These payments ceased after their bankruptcies. Even though the payments made by the state were characterized as "loans," the court found that they were more similar to welfare benefits or energy assistance. *Id.* at 356. Such loans are qualitatively different from student loans, which are the subject of this case.

Several courts have quoted a portion of the legislative history in support of the proposition that governmental units are not prohibited by 11 U.S.C. § 525(a) from assessing financial responsibility, although none of those courts was faced with actual discrimination as is the case here. *See Goldrich, supra*, at 31; *Rose, supra*, at 666; *Henry v. Heyison, supra*, at 442. That portion states: "[Section 525] does not prohibit consideration of other factors, such as future financial responsibility or

ability, and does not prohibit imposition of requirements such as net capital rules, *if applied nondiscriminatorily."* S.Rep. No. 989, 95th Cong., 2nd Sess. 81, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5867 (emphasis added). The emphasized clause obviously modifies the imposition of net capital rules, but it is not clear that it *modifies the consideration of future responsibility.* The words of 11 U.S.C. § 525(a) do not prohibit discrimination in the granting of student loans and the legislative history does not unambiguously provide otherwise. This court is not persuaded that the granting of credit is sufficiently similar to licenses, permits, charters and franchises to fall within the aegis of 11 U.S.C. § 525(a). Even with a broad construction, the court cannot, by liberal interpretation, expand the scope of a statute beyond the words contained in it. *Goldrich, supra,* at 30; *In re Madison Madison International of Illinois, P.C.,* 77 B.R. 678 (Bankr.E.D.Wis.1987). These decisions, and the court's decision in this case, are consistent with the principle of *ejusdem generis,* which is that a general term following a specific list can apply only to things similar to the list. *Harrison v. PPG Industries, Inc.,* 446 U.S. 578, 588, 100 S.Ct. 1889, 1895, 64 L.Ed.2d 525 (1980); *In re Watts, supra,* at 355. The specific list in 11 U.S.C. § 525(a) refers to privileges of citizens to exercise their livelihood, such as obtaining building permits, state contracts or liquor licenses, or to the exercise of personal freedom, such as driving a car. *See In re Rees,* 61 B.R. 114 (Bankr.D.Utah 1986). These rights preserve the debtor's fresh start; but the mandatory granting of a student loan after discharge would give the debtor a running start, well ahead of those who had never declared bankruptcy. Furthermore, student loans are not in the same category as state grants that preserve a vital human need, such as maintaining a home. Having a home is a necessity; a college education is a privilege and an advantage. Obtaining credit to pursue higher education goes too far beyond the enumerated list in 11 U.S.C. § 525(a).

■ The plaintiff contends that the enactment of 34 C.F.R. § 682.201(e)(4) after *Goldrich* was decided makes the corresponding inconsistent state statute, Wis. Stat. § 39.32(3)(g), invalid or superseded. However, the two provisions are not necessarily in conflict. The federal regulation provides that a student may be eligible if he or she discharged a student loan in bankruptcy; the state agency by state statute states that such a student will not be eligible. Wis.Stat. § 39.32(3)(g). If the state had looser requirements, federal insurance would still cover the loan. There is nothing in the federal regulations that states that a state *must* have the same eligibility standards as the federal regulations in order to qualify for guarantees by the Department of Education. The federal program could require such consistency, but it does not. The stricter state requirements for eligibility are, therefore, permissible.

■ Finally, since the state may refuse to approve the loan, plaintiff's claim for defamation must also fail.

This decision shall constitute the court's findings of fact and conclusions of law under Bankruptcy Rule 7052. An order dismissing the complaint will be entered accordingly.