Sue TOTH, Plaintiff–Appellant,

v.

MICHIGAN STATE HOUSING DEVEL-
OPMENT AUTHORITY, in their official
capacity; James Logue III, individually
and in his official capacity; Robert
Brown, individually and in his official
capacity, Defendants–Appellees.

No. 96–2206.

United States Court of Appeals,
Sixth Circuit.

Submitted Sept. 10, 1997.

Decided Feb. 12, 1998.

Allan J. Rittenhouse (briefed), Iron Mountain, MI, for Plaintiff–Appellant.

Steven D. Hughey (briefed), Office of the Attorney General, Finance & Development Division, Lansing, MI, Willard G. Moseng, Michigan State Housing Development Authority, Lansing, MI, Kurt E. Krause, Department of Attorney General, Finance and Development Division, Lansing, MI, for Michigan State Housing Development Authority.

Willard G. Moseng, Michigan State Housing Development Authority, Lansing, MI, for James Logue III.

Steven D. Hughey, Office of the Attorney General, Finance & Development Division, Lansing, MI, Willard G. Moseng, Michigan State Housing Development Authority, Lansing, MI, for Robert Brown.

Before: MERRITT, JONES, and NORRIS, Circuit Judges.

## OPINION

ALAN E. NORRIS, Circuit Judge.

Plaintiff Sue Toth appeals from the district court's grant of summary judgment to the Michigan State Housing Development Authority and two of its officers in an action alleging discrimination in violation of 11 U.S.C. § 525(a) of the Bankruptcy Code. She contends that the denial of her application for a low income home improvement loan based upon a recent discharge in bankruptcy was contrary to the language of § 525(a) of the Code. Plaintiff further claims that the violation of § 525(a) gives rise to a 42 U.S.C. § 1983 claim. Because we conclude that § 525(a) does not forbid consideration of a prior bankruptcy in post-discharge credit arrangements with state entities, we affirm.

### I.

Plaintiff received a discharge in bankruptcy in June 1995. Several months later, she applied to the Michigan State Housing Development Authority ("MSHDA") for a home improvement loan. That agency administers a home improvement loan program of the

United States Department of Housing and Urban Development designed to assist eligible low income participants. Thereafter, in November 1995, MSHDA notified plaintiff that her loan application had been denied due to the agency's policy of requiring at least three years to lapse after the date of a bankruptcy discharge before a loan application will be processed.

Plaintiff filed suit in February 1996 in United States District Court for the Western District of Michigan alleging that MSHDA and two of its officials unlawfully discriminated against her in violation of § 525(a) of the Bankruptcy Code. She sued the two officials, James Logue III, executive director of MSHDA, and Robert Brown, manager of MSHDA's home improvement loan program, in both their official and individual capacities. Plaintiff contended that § 525(a) prohibits a state's denial of a low-interest home improvement loan based solely upon a prior discharge in bankruptcy, and that the violation of § 525(a) gave rise to a cause of action under 42 U.S.C § 1983.[1]

■ The parties consented to the exercise of jurisdiction by a magistrate judge, who issued the district court's opinion and order holding that the court had jurisdiction over the case notwithstanding the Eleventh Amendment,[2] and granted defendants' motion for summary judgment on the merits.

## II.

■ The primary issue raised by this appeal is whether the denial by MSHDA of a home improvement loan solely because the applicant had been discharged in bankruptcy within three years of the loan application violates 11 U.S.C. § 525(a) of the Bankruptcy Code. Plaintiff asserts that the strictures of § 525(a) apply to the home improvement loan program operated by the Michigan agency to prohibit implementation of the agency's poli-

cy to deny her a loan based solely upon her prior discharge in bankruptcy. We disagree.

### A.

Section 525(a) provides:

(a) ... a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, *or other similar grant to*, condition such a grant to, *discriminate with respect to such a grant* against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, *solely because* such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

11 U.S.C. § 525(a) (1996) (emphasis added).

To the extent that it may apply to the circumstances of this case, § 525(a) prohibits a governmental entity from denying a "license, permit, charter, franchise, or other similar grant" or discriminating "with respect to such a grant" solely on the basis that the person seeking such a boon has been a bankrupt.

### B.

One could, of course, argue that the scope of § 525(a)'s "other similar grant" language should be construed broadly, relying upon the general policy underlying bankruptcy, that a debtor should be able to have a "fresh start," to preclude conduct that would frustrate that policy. However, the courts of

---

1. Although the complaint also purported to invoke the Fifth and Fourteenth Amendments to the United States Constitution, plaintiff failed to develop any theory under which any rights guaranteed by those provisions might have been violated.

2. The court below properly dismissed plaintiff's claims for punitive damages under § 106(a). Section 106(a) expressly abrogates a state's sovereign immunity from suit when the state is sued under § 525 for non-punitive damages. Thus, the Eleventh Amendment precludes plaintiff's claim against MSHDA for punitive damages.

appeals that have approached the question have read the statute's reach narrowly, focusing upon the specific language of the statute. *See, e.g., Watts v. Pennsylvania Hous. Fin. Co.,* 876 F.2d 1090, 1093–94 (3d Cir. 1989); *In re Goldrich,* 771 F.2d 28, 30 (2d Cir.1985). *Watts* involved an emergency mortgage assistance program designed by the State of Pennsylvania to prevent imminent mortgage foreclosures by providing for loans to distressed borrowers in the form of direct payments to their mortgage lenders, keeping their mortgages current. When plaintiff borrowers filed for bankruptcy, the program suspended these payments for the duration of the Bankruptcy Code's automatic stay. Plaintiffs contended this suspension violated § 525(a). In response, the court of appeals noted that a loan from the Pennsylvania program simply was not a "license, permit, charter [or] franchise," and that since those terms "are in the nature of indicia of authority from a governmental unit to ... pursue some endeavor," the term "similar grant" should be given the same meaning. *Watts,* 876 F.2d at 1093. Similarly, the court in *In re Goldrich* concluded that § 525(a) did not prohibit consideration of prior bankruptcies in credit decisions, since "the language of section 525 may not properly be stretched so far beyond its plain terms." *Goldrich,* 771 F.2d at 29. We agree with the analysis employed by our sister courts.

The items enumerated in the statute—licenses, permits, charters, and franchises—are benefits conferred by government that are unrelated to the extension of credit. They reveal that the target of § 525(a) is government's role as a gatekeeper in determining who may pursue certain livelihoods. It is directed at governmental entities that might be inclined to discriminate against former bankruptcy debtors in a manner that frustrates the "fresh start" policy of the Bankruptcy Code, by denying them permission to pursue certain occupations or endeavors. The intent of Congress incorporated into the plain language of § 525(a) should not be transformed by employing an expansive understanding of the "fresh start" policy to insulate a debtor from all adverse consequences of a bankruptcy filing or discharge. A reckoning of an applicant's financial responsibility is an essential part of any lender's evaluation of a post-discharge application for a loan or extension of credit.

Accordingly, the district court correctly concluded that plaintiff failed to make out a case of discrimination under § 525(a), since that section does not include within its purview either the extension of credit by home loan programs of the nature involved in this case, or the specific conduct of defendants about which plaintiff complains.

### III.

Since violation of § 525(a) was the predicate for plaintiff's claim brought under 42 U.S.C. § 1983, no relief is available under § 1983.

### IV.

The state defendants contend that the judgment in their favor can be affirmed on an alternative ground—by reversing the district court's denial of their claim to sovereign immunity. This cross-assignment of error is based upon their reading of the Supreme Court's recent decision in *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Defendants contend that plaintiff's claims for money damages are barred by the State of Michigan's sovereign immunity as guaranteed by the Eleventh Amendment. We need not reach this contention. No notice of appeal was filed by these defendants, and their cross-assignment of error must therefore be treated as having been raised only to protect the judgment below. In such an instance, error is assigned by an appellee only as a shield, cannot be used to modify the judgment, and will be considered only when necessary to prevent reversal of the judgment under review. *United States v. American Ry. Express Co.,* 265 U.S. 425, 435, 44 S.Ct. 560, 563–64, 68 L.Ed. 1087 (1924).

### V.

The judgment of the district court is **affirmed.**