PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

TAYLOR AYES; WILLIAM P.
CUTSHALL; FRANK A. RIBAR; EDWARD
C. SMITH; JAMES F. MARTIN;
WILLIAM C. TERRIO,
          *Plaintiffs-Appellants,*

          v.

U. S. DEPARTMENT OF VETERANS
AFFAIRS,
          *Defendant-Appellee.*

No. 05-2263

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, Senior District Judge.
(CA-04-904-5)

Argued: October 26, 2006

Decided: December 27, 2006

Before WILKINSON, NIEMEYER, and WILLIAMS,
Circuit Judges.

Affirmed by published opinion. Judge Williams wrote the opinion, in
which Judge Wilkinson and Judge Niemeyer joined.

## COUNSEL

**ARGUED:** Trawick Hamilton Stubbs, Jr., STUBBS & PERDUE,
P.A., Raleigh, North Carolina, for Appellants. Neal Irving Fowler,

OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Laurie B. Biggs, STUBBS & PERDUE, P.A., Raleigh, North Carolina, for Appellants. Frank D. Whitney, United States Attorney, Anne M. Hayes, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

---

**OPINION**

WILLIAMS, Circuit Judge:

Taylor Ayes, William P. Cutshall, Frank A. Ribar, Edward C. Smith, James F. Martin, and William C. Terrio (collectively "Appellants") filed a class action complaint against the U.S. Department of Veterans Affairs (VA) on behalf of themselves and a putative class of veterans. The complaint alleged that the VA violated 11 U.S.C.A. § 525 (West 2004 & Supp. 2006), the anti-discrimination provision of the Bankruptcy Code, by refusing to fully restore veteran home-loan guaranty entitlements to Appellants solely because of their previous discharges in bankruptcy. The district court granted the VA's motion to dismiss, made pursuant to Federal Rule of Civil Procedure 12(b)(6), because it concluded that § 525(a) does not apply to the veteran guaranty entitlement, which is set out at 38 U.S.C.A. § 3701 *et. seq.* (West 2002 & Supp. 2006).

We affirm. Section 525(a) prohibits a governmental unit from denying a "license, permit, charter, franchise, or other similar grant" solely because an individual has filed for or received a discharge in bankruptcy. 11 U.S.C.A. § 525(a). Because Appellants concede that the veteran guaranty entitlement is not a "license," "permit," "charter," or "franchise" and we hold that it is not an "other similar grant," we conclude that § 525(a) does not apply to the veteran guaranty entitlement.

I.

Because the facts of this appeal are undisputed, we are left only to decide the legal question of § 525(a)'s applicability to the veteran

guaranty entitlement. Pursuant to the Servicemen's Readjustment Act of 1944, codified at 38 U.S.C.A. § 3701 *et seq.*, the VA provides housing assistance to certain veterans meeting length-of-service requirements by guarantying home loans made to them by private lenders. The VA "automatically guarantee[s]" loans for certain veterans when the loans will be used for, among other things, the purchase or construction of a home. 38 U.S.C.A. § 3710(a). Pursuant to 38 U.S.C.A. § 3703, the VA computes the guaranty amount as a percentage of the unpaid loan balance, with the percentage varying depending on the size of the original loan.[1] 38 U.S.C.A. § 3703(a)(1)(A). If the veteran later defaults on the loan, the VA pays the private lender the amount it guaranteed on behalf of the veteran. 38 U.S.C.A. § 3732(a)(1). In such cases, the VA becomes subrogated to the rights of the private lender for the amount paid by the VA on the guaranty. *Id.* While the regulations relating to the veteran guaranty program state that any amount paid by the VA in satisfaction of a guaranty made on behalf of a veteran "shall constitute a debt owing to the United States by such veteran," 38 C.F.R. § 36.4323(e) (2006), the VA acknowledges that it does not take any action to collect this debt.

There is no limit to the number of times a veteran may receive the guaranty entitlement, but the amount of guaranty available to the veteran is always limited by any previously used guaranty amount that has not been restored to the VA or does not otherwise qualify for exclusion. 38 U.S.C.A. § 3702(b). Specifically, § 3702(b) provides the following:

> In computing the aggregate amount of guaranty or insurance housing loan entitlement available to a veteran under this chapter, the Secretary may exclude the amount of guaranty or insurance housing loan entitlement used for any guaranteed, insured, or direct loan under the following circumstances:
>
> > (1) (A) The property which secured the loan has been disposed of by the veteran or has

---

[1]For example, the basic entitlement for any loan of more than $56,520 is the lesser of $36,000 or forty percent of the loan. 38 U.S.C.A. § 3703(a)(1)(A)(i)(III)(West 2002 & Supp. 2006).

> been destroyed by fire or other natural hazard; and
>
> (B)   the loan has been repaid in full, or the Secretary has been released from liability as to the loan, or if the Secretary has suffered a loss on such loan, the loss has been paid in full.

38 U.S.C.A. § 3702(b)(1)(A)-(B).

In other words, the amount of guaranty available to a veteran upon a successive application for the benefit is reduced by the amount of loss that the VA suffered on any previous guaranty made on behalf of the veteran until that loss is repaid.[2] Absent an exercise of the VA's discretion to waive the repayment requirements, if a veteran wishes to receive the "full" guaranty amount after the VA previously suffered a loss on a guaranty made on his or her behalf, the veteran has no choice but to repay the loss in full.

Appellants are six veterans who allege that they sought home loans from various private lenders after having received discharges in bankruptcy under either Chapter 7 or Chapter 11 of the Bankruptcy Code and were denied these loans because the VA refused to extend "full" guaranties on their behalf. The VA refused to extend full guaranty amounts to Appellants because it had suffered losses on previous loan guaranties made on their behalf that had not been repaid. Appellants contend that as a result of the VA's decision not to fully reinstate loan guaranties to them following their discharges in bankruptcy, they

---

[2]The VA does retain some discretion in computing the aggregate amount of guaranty available to a veteran who has previously used the guaranty entitlement. Section 3702(b) states that the VA Secretary "may exclude" previously used amounts of guaranty when the requirements in either § 3702(b)(1)(A) or (b)(1)(B) are met. 38 U.S.C.A. § 3702(b). The regulations implementing the statute provide that the VA Secretary, "in any case involving circumstances deemed appropriate, may waive" the requirements in § 3702(b)(1)(A) or (b)(1)(B). 38 C.F.R. § 36.4302 (2006). Obviously, the VA chose not to exercise its discretion to waive these requirements in Appellants' cases.

were severely limited in their ability to obtain private home loans. We have jurisdiction over this appeal pursuant to 28 U.S.C.A. § 1291 (West 2006).

## II.

We review de novo the district court's grant of the VA's motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6). *Bominflot, Inc. v. The M/V Henrich S*, 465 F.3d 144, 145 (4th Cir. 2006). "[A] Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

Section 525(a) of the Bankruptcy Code provides in pertinent part that "a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to . . . [or] discriminate with respect to such a grant against . . . a person that is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act . . . ." 11 U.S.C.A. § 525(a). The statute codified the result of *Perez v. Campbell*, 402 U.S. 637 (1971), in which the Supreme Court applied the Supremacy Clause to strike down an Arizona financial responsibility law that conditioned reinstatement of a debtor's driver's license on repayment of an accident-related judgment that had been discharged in bankruptcy. *Id.* at 656. The Court held that the Arizona law violated the policy underlying the Bankruptcy Code, sometimes called the "fresh start" policy, that debtors be given a "new opportunity in life . . . unhampered by the pressure and discouragement of pre-existing debt" because it gave creditors a "powerful weapon with which to force bankrupts to pay their debts despite their discharge." *Id.* at 648, 654 (internal quotation marks omitted).

To establish a violation of § 525(a), Appellants must show that (1) the VA is a governmental unit, (2) the veteran guaranty entitlement is an item covered by the statute, and (3) the VA discriminated against Appellants solely because of their discharges in bankruptcy. 11 U.S.C.A. § 525(a). The VA concedes that it is a "governmental

unit" under the statute, but argues that Appellants cannot show that the veteran guaranty entitlement is an item covered by § 525(a) or that the VA discriminated against Appellants solely because of their prior discharges in bankruptcy.

Conceding that the veteran guaranty entitlement is not a "license," "permit," "charter," or "franchise," Appellants argue that the veteran guaranty entitlement comes within § 525's protections because it is an "other similar grant." The veteran guaranty entitlement is undoubtedly a "grant" as that term is used in the statute: a veteran satisfying the length-of-service requirements is entitled to the loan guaranty benefit. *See Black's Law Dictionary* 719 (8th ed. 2004) (defining grant as "an agreement that creates a right of any description other than the one held by the grantor"). The question is whether it is a "similar" grant to those specific items listed in § 525(a).

In interpreting a statute, "a court should always turn first to one, cardinal canon [of construction] before all others": the plain meaning rule. *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992). We must presume that "Congress says in a statute what it means and means in a statute what it says. . . ." *Hartford Underwriters Ins. Co. v. Union Planters Blank, N.A.*, 530 U.S. 1, 6 (2000)(internal quotation marks omitted). When the words of a statute are unambiguous, then, "this first canon is also the last: 'judicial inquiry is complete.'" *Conn. Nat'l Bank*, 503 U.S. at 254 (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)). Of course, in looking to the plain meaning, we must consider the context in which the statutory words are used because "[w]e do not . . . construe statutory phrases in isolation; we read statutes as a whole." *United States v. Morton*, 467 U.S. 822, 828 (1984).

Section 525(a)'s meaning is plain. The statute clearly specifies that its protections extend to "licenses, permits, charters, [and] franchises," and to grants "similar" to those items.[3] 11 U.S.C.A. § 525(a).

---

[3]We note that our mode of analysis would not change even if the word "similar" were omitted from the statute. When "general words follow specific words in a statutory enumeration," we apply the interpretive principle of *ejusdem generis* ("of the same kind") and construe "the general words . . . to embrace only objects *similar* in nature to those objects

Although the term "grant" is not defined in the statute, the use of the word "similar" limits the universe of "grants" to which § 525(a) applies, ensuring that only grants bearing a family resemblance to licenses, permits, charters, and franchises enjoy the anti-discrimination protections of the Bankruptcy Code. Unfortunately for Appellants, the veteran guaranty entitlement bears no such resemblance to the items listed in § 525(a). Licenses, permits, charters, and franchises are all governmental authorizations that typically permit an individual to pursue some occupation or endeavor aimed at economic betterment. *See Watts v. Pa. Hous. Fin. Co.*, 876 F.2d 1090, 1093 (3d Cir. 1989)("[T]he items enumerated [in § 525(a)] are in the nature of indicia of authority from a governmental unit to the authorized person to pursue some endeavor."). For example, governmental entities issue real-estate, driver's, and medical licenses; building and business permits; corporate charters; and utility franchises. All of these implicate "government's role as a gatekeeper in determining who may pursue certain livelihoods," *Toth v. Mich. State Hous. Dev. Auth.*, 136 F.3d 477, 480 (6th Cir. 1998), and show that Congress intended § 525(a)'s protections to be "limited to situations sufficiently similar to *Perez*," *In re Goldrich*, 771 F.2d 28, 30 (2d Cir. 1985). This interpretation of "other similar grant" is supported by the remainder of § 525(a), which forbids governmental discrimination in *employment* decisions based on an individual's discharge in bankruptcy. *See* 11 U.S.C.A. § 525(a).

A home loan guaranty, on the other hand, does not implicate the government's gate-keeping role in determining who may pursue certain livelihoods because, unlike the enumerated items in § 525(a), a person can obtain a home loan or guaranty from the private sector. A governmental entity's refusal to issue, for example, a commercial real estate license to a bankrupt individual completely forecloses that indi-

---

enumerated by the preceding specific words." *Wash. State Dep't of Soc. and Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 384 (2003)(emphasis added)(internal quotation marks omitted). Omitting the word "similar," Section 525(a) would present a "textbook *ejusdem generis* scenario." *Andrews v. United States*, 441 F.3d 220, 224 (4th Cir. 2006). It would contain a general phrase — "other grant" — that followed a list of specific items — "license, permit, charter, franchise." 11 U.S.C.A. § 525(a).

vidual from legally pursuing a career as a commercial realtor. If a governmental entity refuses to guarantee a home loan for a bankrupt individual, however, that individual is not doomed to homelessness; he may seek a guaranty from family or friends, may seek another private loan, perhaps on less favorable terms, or he may rent.[4] Indeed, Appellants concede that they "might be able to obtain a home loan from another lender on less favorable terms." (Appellant's Br. at 18.) That governmental units do not exercise exclusive or even pervasive control over the "world" of home loans dooms Appellants' argument.

The Second Circuit's decision in *Goldrich*, which has served as the lodestar in the § 525(a) context, is the closest analogue to the instant case. *Goldrich* held that § 525(a) was inapplicable to New York's student loan guaranty program because a student loan guaranty was not a "similar grant" to the items listed in the statute. *Goldrich*, 771 F.2d at 30-31. The *Goldrich* court reasoned that a "credit guarantee is not

_____

[4]Appellants rely on the Second Circuit's decision in *In re Stoltz*, 315 F.3d 80 (2d Cir. 2002), in support of their contention that the veteran guaranty entitlement is similar to the enumerated items in § 525(a). In *Stoltz*, the Second Circuit held that a public housing lease is an "other similar grant" under § 525(a). *Id.* at 90-91. Reasoning that the enumerated items in § 525(a) are "property interests [that] are unobtainable from the private sector and essential to a debtor's fresh start," the *Stoltz* court noted that a public housing lease is "by definition . . . obtainable only from governmental entities" and that "[i]n light of the notoriously lengthy waiting lists that may exist for public housing, . . . an evicted debtor-tenant . . . would quite possibly become homeless - a status not conducive to economic survival." *Id.* at 90. Even if we agreed with *Stoltz*, the public housing lease at issue in that case is manifestly different than the home loan guaranty here. First, unlike a public housing lease, home loans and loan guaranties are not "by definition" only obtainable from governmental entities. Second, as we have noted, failure to obtain a home loan guaranty is not a step toward homelessness for the veteran-debtor; the veteran may obtain a home loan on less favorable terms or may choose alternative housing arrangements that do not involve ownership. Third, unlike the public housing benefit in *Stoltz*, the veteran guaranty entitlement is not available only to those who, through bankruptcy or other financial hardship, cannot obtain a home loan. If Oliver Stone, the presumably wealthy Oscar-winning film director and veteran of the Vietnam War, applied for the guaranty benefit, he would be entitled to receive it just like the recently-bankrupted veteran would.

a license, permit, charter, or franchise[,] nor is it in any way similar to those grants," and stated that "[a]lthough the exact scope of the items enumerated [in § 525(a)] may be undefined, the fact that the list is composed solely of benefits conferred by the state that are unrelated to credit[5] is unambiguous." *Id.* at 30 (footnote added). "[R]eluctant to probe beyond the plain language of [§ 525(a)]," the court concluded that the student loan guaranty at issue was of a "distinctly different character" than the items listed in the statute. *Id.*

Appellants acknowledge that *Goldrich*'s rationale is plainly at odds with their position on appeal, but they argue that Congress's enactment in 1994 of 11 U.S.C.A. § 525(c) rendered *Goldrich* a dead letter and clearly evinced Congress's intent to have § 525(a) apply to all government loan guaranties. To be sure, § 525(c) clearly abrogated *Goldrich*'s specific holding and extended the anti-discrimination protections of § 525(c) to student loan guaranties. *See* 11 U.S.C.A. § 525(c)("A governmental unit that operates a *student grant or loan program* . . . may not deny a grant, loan, *loan guarantee*, or loan insurance to a person that is or has been a debtor under this title or . . . under the Bankruptcy Act. . . ." (emphasis added)). There is, however, no indication in the language of § 525(c) that Congress also intended the section to apply to other kinds of loan guaranties besides those of the student loan variety. Congress's tightly-worded abrogation of *Goldrich*'s specific holding "justif[ies] the inference that items

---

[5]While we emphasize that the central question under § 525(a) is whether the home loan guaranty is an "other similar grant" to the items listed in the statute and not whether the guaranty is more like an extension of credit, we agree with the district court that "the extension of a home loan guaranty has financial consequences for the guarantor that are not dissimilar to consequences often faced by those who extend credit." (J.A. at 132.) Moreover, and contrary to Appellants' contention, a veteran's creditworthiness is relevant, at least minimally, to the overall decision to extend the guaranty benefit; a veteran is only automatically eligible for a guaranty when a private lender concludes that the veteran meets the standards of creditworthiness — including debt-to-income ratio, income-stability, and monthly-income requirements — established *by the VA*. *See* 38 U.S.C.A. §§ 3701(g)(2), (3) (West 2002). These facts reveal the similarities between the veteran guaranty entitlement and traditional extensions of credit and clearly show the *dissimilarities* between the guaranty entitlement and the items listed in § 525(a).

not mentioned" — in this case, other kinds of loan guaranties — "were excluded by deliberate choice, not inadvertence." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003). Had Congress intended to extend § 525's protections to other government loan guaranties besides student loans, it easily could have revised § 525(a) to prevent a governmental unity from denying a "license, permit, franchise, charter, *loan guaranty*, or other similar grant" on the basis of a previous discharge in bankruptcy or, alternatively, it could have included some term in § 525(c) that would have supported extension of § 525(a)'s protections to all government loan guaranties, not just those of the student loan variety. That Congress chose instead to narrowly amend § 525 to abrogate the specific holding of *Goldrich* is strong evidence that its failure to mention other kinds of loan guaranties in § 525(c) was intentional.[6] The time-honored maxim *expressio unius est exclusio alterius* ("the expression of one thing implies the exclusion of another") applies with great force here.

In reaching this conclusion, we, like our sister circuits, refuse to venture beyond the confines of the statutory language to broadly construe § 525(a)'s specific "other similar grant" language in reliance on the general "fresh start" policy underlying the Bankruptcy Code. *See, e.g.*, *Watts*, 876 F.2d at 1093-94 (holding that an emergency mortgage-assistance loan is not an "other similar grant" and stating that "[w]hen an unambiguous statute is interpreted to mean what it says, the interpretation is not narrow"); *Toth*, 136 F.3d at 479-80 (holding that a government home improvement loan is not an "other

---

[6]Appellants argue that exclusion of the veteran loan guaranty program from the protections of § 525(a) makes little sense in light of Congress's extension of § 525(a)'s coverage to student loan guaranties, but Congress could easily have concluded that the differences between student and home loan guaranties require such a distinction. Because education is often crucial to securing employment, § 525(c)'s prohibition against discrimination in the granting of student loan guaranties to bankrupts is consistent with § 525's goal of allowing former debtors in bankruptcy to earn a living. *See* 11 U.S.C.A. § 525(c). Moreover, Congress has taken other steps to ensure the continuing wide availability of student loans, highlighting their uniqueness under the Bankruptcy Code. *See, e.g.*, 11 U.S.C.A. 523(a)(8) (West 2004 & Supp. 2006)(making student loans nondischargeable under the Bankruptcy Code except in cases of "undue hardship").

similar grant" under § 525(a)); *Goldrich*, 771 F.2d at 30 (concluding that Congress intended § 525(a)'s reach to be "limited to situations sufficiently similar to *Perez*".). Assuming, as we must, that "Congress says in a statute what it means and means in a statute what it says there," *Hartford Underwriters*, 530 U.S. at 6 (internal quotation marks omitted), we conclude that Congress's limitation of § 525(a)'s protections to licenses, permits, charters, franchises, and grants similar to those items indicates, at best, the full extent to which Congress intended § 525(a) to effectuate the "fresh start" policy underlying the Bankruptcy Code.[7] As *Watts* noted, because § 525(a) is unambiguous, our interpretation is not "narrow," but instead succinctly correct. *Watts*, 876 F.2d at 1093-94.

## III.

In sum, because we conclude that the veteran guaranty entitlement is not an "other similar grant" within the meaning of § 525(a), we hold that the anti-discrimination protections of § 525 do not apply to the veteran home loan guaranty program. While we have sympathy for Appellants, if their arguments carried the day and the VA was always required to issue a "full" guaranty irrespective of whether it has suffered a loss on a veteran's behalf, the VA's financial exposure under the program would increase dramatically, potentially threatening the program's long-term viability. This is no mere pipedream, as

---

[7] Indeed, on its face, § 525(a) applies to items — such as the recreational hunting and fishing licenses noted above — that can in no way be described as "essential" to a debtor's fresh start, which counsels against courts extending § 525(a) beyond its plain language to effectuate the overarching policy of the Bankruptcy Code. *See Stoltz*, 315 F.3d at 95 (Walker, C.J., dissenting)("Although some interests such as a vendor license, may be essential to a bankrupt's fresh start, others, such as a recreational fishing license, are not."). On the other hand, the inclusion of these items within the definitions of the enumerated items in § 525(a) also does not force a reading of the statute that brings other items unrelated to the goals of § 525(a) within the statute's protections. That the plain language of § 525(a) extends § 525(a)'s protections to items unrelated to § 525(a)'s policies is not an invitation to courts to extend § 525(a)'s protections to items *not covered* by the plain language. In any event, even recreational hunting and fishing licenses are only available from governmental entities.

the incentive for veterans to repay home loans guaranteed by the VA would disappear if veterans could demand full guaranties even after the VA had suffered an unrecouped loss on a guaranty made on their behalf. Requests for full guaranties would likely multiply like party guests, with the VA ultimately "flipping the bill" on defaulted loans at a greater clip. Appellants assume that the VA has deep pockets; we assume that those pockets only function well when they do not have holes in them. Jettisoning the plain language of § 525(a) to extend its coverage over the VA's guaranty program would create such holes. Nevertheless, if Congress wishes to extend § 525's protections to other kinds of loan guaranties besides student loan guaranties, it can easily do so with a few strokes of the pen.

*AFFIRMED*