UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

No. 06-1913

---

MARFORK COAL COMPANY,

Petitioner,

versus

ROGER L. WEIS; DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS,

Respondents.

---

On Petition for Review of an Order of the Benefits Review Board.
(05-0822-BLA)

---

Argued: May 22, 2007          Decided: October 18, 2007

---

Before WILLIAMS, Chief Judge, GREGORY, Circuit Judge, and Benson
Everett LEGG, Chief United States District Judge for the District
of Maryland, sitting by designation.

---

Affirmed by unpublished opinion. Judge Legg wrote the majority
opinion, in which Judge Gregory concurred. Chief Judge Williams
wrote a dissenting opinion.

---

**ARGUED:** Douglas Allan Smoot, JACKSON & KELLY, P.L.L.C., Charleston,
West Virginia, for Petitioner. S. F. Raymond Smith, RUNDLE &
RUNDLE, L.C., Pineville, West Virginia; Richard Anthony Seid,
UNITED STATES DEPARTMENT OF LABOR, Office of the Solicitor,
Washington, D.C., for Respondents. **ON BRIEF:** Kathy Lynn Snyder,
JACKSON & KELLY, P.L.L.C., Morgantown, West Virginia, for
Petitioner. Howard M. Radzely, Solicitor of Labor, Patricia M.
Nece, Counsel for Appellate Litigation, UNITED STATES DEPARTMENT OF

LABOR, Office of the Solicitor, Washington, D.C., for Respondent, Director, Office of Workers' Compensation Programs.

———————————

Unpublished opinions are not binding precedent in this circuit.

LEGG, Chief District Judge:

In this case we address whether medical evidence offered for the sole purpose of disproving liability constitutes "documentary evidence" under § 725.456(b)(1) of the regulations implementing the Black Lung Benefits Act. Relying on the plain language and history of that regulation, we conclude that it does. Accordingly, we affirm the order of the Benefits Review Board naming petitioner Marfork Coal Co. as the responsible operator liable for the payment of benefits to respondent Roger L. Weis. We also affirm the Board's conclusion that Weis's benefits are payable as of April 1, 1996.

I.

A.

Coal miners are prone to develop pneumoconiosis, commonly known as black lung disease. The Black Lung Benefits Act ("the Act"), 30 U.S.C. § 901 et. seq., provides benefits to coal miners who have been totally disabled by pneumoconiosis, and to the surviving dependents of miners who die of the disease.

The Act places liability for the payment of benefits upon the "responsible" coal operator.[1] Under the regulations implementing the Act, the "responsible operator" is usually the coal company

_____

[1]Daniels Co., Inc. v. Mitchell, 479 F.3d 321, 329 (4th Cir. 2007) (quoting Armco, Inc. v. Martin, 277 F.3d 468, 473 (4th Cir. 2002).

that most recently employed the miner for at least one year.[2] There are a number of grounds, however, upon which the most recent employer can avoid liability. For example, the operator may prove that it did not cause, contribute to, or aggravate the miner's pneumoconiosis.[3] The operator may establish that it lacks the means to pay, in which case the Black Lung Disability Trust Fund will pay.[4] The operator may also prove that the miner was already totally disabled by pneumoconiosis before he was hired.[5]

The Department of Labor ("DOL") is responsible for the administrative adjudication of black lung cases. Generally speaking, the litigation involves three stages. A miner or his survivor first files a claim with a "district director" from the DOL's Office of Workers' Compensation Programs. After investigating the claim, the district director determines whether the claimant is eligible for benefits, and, if so, which operator is presumptively responsible.[6] Any party may appeal the district director's decision to the Office of Administrative Law Judges ("OALJ").[7] Thereafter, appeals are to the DOL's Benefits Review

_____

[2] 20 C.F.R. § 725.495(a)(1) (2007).

[3] Id. § 725.494(a).

[4] Id. § 725.495(c)(1).

[5] See, e.g., Truitt v. North American Coal Co., 2 BLR 1-199 (1979), aff'd sub nom. Director, OWCP v. North American Coal Co., 626 F.2d 1137 (3d Cir. 1980).

[6] See National Mining Ass'n v. Dept. of Labor, 292 F.3d 849, 854 (D.C. Cir. 2002) (citing 20 C.F.R. §§ 725.301-725.423).

[7] Id. (citing 20 C.F.R. §§ 725.450-725.480).

4

Board ("the Board"), and then to the Court of Appeals for the circuit in which the miner's "injury" occurred.[8]

In 2000, the DOL revamped its rules to streamline the handling of black lung cases. One thrust of the new rules is to make conclusive a district director's determination of the "responsible operator" liable for payments. If the district director's determination is overturned on appeal, the case is not remanded to correct the error. Instead, benefits are paid by the Black Lung Disability Trust Fund ("the Fund"). This is the case even if the actual responsible operator can be identified.[9]

To protect the Fund from unwarranted liability, the rules require the parties to present to the district director all documentary evidence concerning which operator is liable.[10] Absent exceptional circumstances, new documentary evidence pertaining to liability may not be thereafter introduced into the record.[11] With this background in mind, we turn to the facts.

B.

Roger L. Weis worked in the coal mines of West Virginia for approximately thirty-six years. Most recently, Weis worked for

---

[8]Id. (citing 20 C.F.R. § 725.481; § 725.482) (citation omitted).

[9]20 C.F.R. §§ 725.407(d); 725.418(d); 65 Fed. Reg. 79990; 79999-80000 (Dec. 20, 2000) (all citations will be to the Dec. 20, 2000 Federal Register).

[10]Id.

[11]20 C.F.R. § 725.456(b)(1).

Marfork Coal Co. ("Marfork"), which employed him from November 1, 1994 to August 1, 2006.[12]

On July 9, 2002, Weis filed a claim for black lung benefits with a DOL district director located in Charleston, West Virginia. On August 23, 2002, the district director notified Marfork of Weis's claim and identified Marfork as a potentially liable coal operator.[13] 20 C.F.R. § 725.407. The regulations required Marfork to file a response in which it either accepted or contested that identification. Id. § 725.408(a)(1). On September 4, 2002, Marfork contested liability.[14]

The district director ordered a complete pulmonary evaluation of Weis. Id. §§ 725.405(b); 725.406(b). On September 24, 2002, Dr. Manu Patel diagnosed Weis with complicated pneumoconiosis, a rare and serious form of black lung disease.[15]

------

[12]Weis retired on August 1, 2006.

[13]See 20 C.F.R. §§ 725.408; 725.494.

[14]In support of its position, Marfork had ninety days in which to submit evidence concerning its employment of Weis and its status as a potentially liable operator. Id. § 725.408(a)(2). Marfork did not submit any evidence.

[15]Coal worker's pneumoconiosis is customarily classified as either "simple" or "complicated." Simple pneumoconiosis seldom results in significant respiratory impairment. Complicated pneumoconiosis, which is far more serious, involves progressive massive fibrosis as a reaction to inhaled coal dust. Complicated pneumoconiosis usually causes significant lung impairment and breathing difficulties. It may induce death or contribute to death by other causes. See Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 7 (1976) (footnotes omitted); N. Leroy Lapp, A Lawyer's Medical Guide to Black Lung Litigation, 83 W. Va. L. Rev. 721, 729-781

On January 28, 2003, the district director issued a "Schedule for the Submission of Additional Evidence" ("the Schedule"). Id. § 725.410(a). The Schedule laid out the district director's preliminary conclusion that Weis was entitled to benefits because of his disease.[16] It gave Marfork thirty days to accept or contest that finding. J.A. 51. It also gave the parties sixty days to submit additional medical evidence concerning Weis's entitlement. Under the regulations, the parties could submit entitlement evidence either to the district director or thereafter to an ALJ if a formal hearing was requested. J.A. 52.

In the Schedule, the district director also preliminarily designated Marfork as the responsible operator. J.A. 51. It gave Marfork thirty days to accept or contest this finding.[17] J.A. 52. It also gave Marfork sixty days in which to submit any "documentary evidence relevant to liability." Id. Such evidence was to include any evidence "relevant to whether another potentially liable operator should have been designated the responsible operator." J.A. 53. The Schedule cautioned that "[a]bsent a showing of extraordinary circumstances, no documentary evidence relevant to

_____

(1981).

[16]A miner with complicated pneumoconiosis is conclusively presumed to be totally disabled. 20 C.F.R. §§ 718.203(b); 718.304.

[17]An operator that fails to respond to the Schedule is deemed to have accepted its designation and to have waived its right to contest liability in any future proceedings. J.A. 52.

7

liability, or testimony of a witness not identified at this stage of the proceedings, may be admitted into the record once a case is referred to the [OALJ]."  Id.

On February 11, 2003, Marfork submitted a DOL Operator Response form to the district director in which it accepted its designation as the responsible operator.  J.A. 65.  It contested, however, that Weis was entitled to benefits.  Id.  Marfork did not submit evidence of any kind to the district director.

Weis, however, did submit additional entitlement evidence to the district director.  He proffered two x-ray interpretations by Dr. John Parker, who compared x-rays of Weis's lungs from 1971, 1974, 1980, 1996, 1999, 2000, and 2003.  Parker diagnosed Weis with "progressive massive fibrosis," another name for complicated pneumoconiosis.[18]  Parker noted that the disease had "progressed" between 1996 and 2003.  J.A. 14.

On July 7, 2003, the district director issued a proposed order awarding Weis benefits and holding Marfork liable.  Marfork timely requested a formal hearing before an ALJ.  On September 18, 2003 the case was referred to the OALJ.[19]

---

[18]See Lisa Lee Mines v. Director, OWCP, 86 F.3d 1358, 1359-60 (4th Cir. 1996) (en banc).

[19]The district director prepared a list of contested issues for the hearing.  J.A. 111-113.  The issues focused on entitlement. "Responsible operator" is not marked as a contested issue.

8

In preparation for a hearing before the ALJ, Marfork had Weis examined by Dr. Robert Crisalli. The examination suggested that Weis was indeed suffering from complicated pneumoconiosis. J.A. J.A. 354; 364. This revelation prompted Marfork to start "scouring hospital admissions, [as well as] State claims, to find out if there were any earlier x-rays, which is standard procedure in our [Marfork's attorneys'] office." Id. As part of this search, Marfork, in August 2004, discovered a 1992 x-ray of Weis's lungs indicating that Weis was then suffering from the disease, a full two years before Marfork hired him. This medical evidence was significant. If Weis had developed complicated pneumoconiosis before Marfork hired him, another operator would be solely liable for Weis's benefits.[20]

On October 19, 2004, the ALJ held a hearing. In addition to Weis and Marfork, the Director of the Office of Workers' Compensation Programs (the "OWCP Director") was a party.[21] The OWCP Director, who acts as trustee for the Black Lung Benefits Fund, is responsible for conserving its assets.[22] Marfork offered into

---

[20]See, e.g., Truitt v. North American Coal Co., 2 BLR 1-199 (1979), aff'd sub. nom. Director, OWCP v. North American Coal Co., 626 F.2d 1137 (3d Cir. 1980).

[21]Weis and the OWCP Director are the two respondents in this proceeding. The OWCP Director, who administers the Black Lung Benefits Program, 20 C.F.R. § 701.202(f) (2007), entered the case when Marfork notified him that it contested liability. J.A. 159.

[22]See, e.g., Truitt, 2 BLR 1-202.

evidence reports from three doctors who opined, based on the x-ray, that Weis was disabled before he came to work for Marfork.[23] The reports were admitted without objection.

In light of the new evidence, the ALJ called for post-hearing briefs. In his brief, the OWCP Director contended that the medical reports should be excluded. Under 20 C.F.R. § 725.456(b)(1), he argued, Marfork was required to have presented all evidence bearing on liability to the district director. Accordingly, Marfork could introduce the evidence now only by showing extraordinary circumstances. Because the x-ray was waiting to be found, no such circumstances existed.

The ALJ agreed. In a written opinion dated June 27, 2005, he excluded Marfork's evidence, awarded benefits to Weis,[24] and held Marfork liable. He further concluded that Marfork had failed to develop its exculpatory evidence in a timely fashion.[25]

---

[23]Drs. Wiot, Meyer, and Hippensteel all read the x-ray for the company. All three concluded that the x-ray was positive for complicated pneumoconiosis.

[24]The ALJ determined that Weis's benefits are payable as of April 1996, the date that admissible x-ray evidence showed that Weis first suffered from complicated pneumoconiosis. Id. § 725.503(b).

[25]The ALJ made two additional findings that we must briefly address. The ALJ found that Marfork could not contest its status as a potentially liable operator because it had failed to submit evidence within ninety days of receiving notice of Weis's claim. J.A. 230; see 20 C.F.R. § 725.408(b)(1). The ALJ also found that Marfork had waived its right to contest its liability under 20 C.F.R. § 725.412(a)(2) because it had accepted its designation as responsible operator before the district director. J.A. 230. The

10

On August 19, 2005, Marfork appealed to the Board. On June 30, 2006, the Board affirmed in a split decision. The majority held that medical records are included in the term "documentary evidence" referenced in § 725.456(b)(1). J.A. 395. The Board also affirmed the ALJ's finding that Marfork had failed to prove "extraordinary circumstances." J.A. 397.

Marfork timely filed the instant petition for review. We have jurisdiction under 33 U.S.C. § 921(c). For the reasons stated below, we deny Marfork's petition and affirm the decision of the Board.

II.

On a petition for review of an order of the Board, we independently review the record. Daniels Co., Inc., v. Mitchell, 479 F.3d 321, 329 (4th Cir. 2007) (citations omitted). We review the Board's conclusions of law de novo. Id. We determine whether substantial evidence exists to support the ALJ's findings of fact. Consolidation Coal Co. v. Williams, 453 F.3d 609, 614 (4th Cir. 2006).[26]

---

Board did not rely on either ground as support for its decision, however. Accordingly, neither finding is presently before us. See Grigg v. Director, OWCP, 28 F.3d 416, 418 (4th Cir. 1994) ("We confine our review to the grounds upon which the Board based its decision.").

[26]Substantial evidence is "'more than a mere scintilla.'" Consolidation Coal Co. v. Williams, 453 F.3d 609, 614 (4th Cir. 2006) (citations omitted). Specifically, it is "such relevant

11

This case involves the interpretation of § 725.456(b)(1), which governs the admissibility of "documentary evidence pertaining to the liability of a potentially liable operator and/or the identification of a responsible operator." Unless submitted to the district director, such documentary evidence "shall not be admitted...in the absence of extraordinary circumstances." Id. The full text of the section is as follows:

> Documentary evidence pertaining to the liability of a potentially liable operator and/or the identification of a responsible operator which was not submitted to the district director shall not be admitted into the hearing record in the absence of extraordinary circumstances.

Id.[27]

Medical evidence concerning entitlement to benefits is treated differently. Id. § 725.456(b)(2). Entitlement evidence may be offered at either the district director or the ALJ stage. Id. The controversy in the instant case arose because the medical opinions concerning the 1992 x-ray are pertinent both to Weis's entitlement to benefits and to Marfork's liability.

Marfork would read into § 725.456(b)(1) an implied exception for medical evidence that pertains to liability. According to

_____

evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 615 (internal quotation marks and citations omitted).

[27]Neither the regulations nor the regulatory history found in the Federal Register define the term "documentary evidence."

Marfork, the regulation would now read, "documentary evidence pertaining to...liability, except for medical evidence." The OWCP Director disagrees, maintaining that the regulation is not only clear, but that the DOL intended it to apply to all evidence, medical or otherwise, that bears upon liability.

We agree with the Director. His interpretation conforms to the plain meaning of the regulation, which is unqualified.[28] His interpretation is also supported by the regulatory history.

The DOL revised the Act's regulations in 2000. One of the Department's objectives was to simplify and streamline the processing of claims at the district director level. 65 Fed. Reg. 79990.

An initial draft of the regulations would have required both liability and entitlement evidence to be presented to the district director.[29] Id. at 79989. The Department observed that this

---

[28]Because the black lung regulations are administered by the OWCP Director, his interpretation is entitled to "substantial deference 'unless it is plainly erroneous or inconsistent with the regulation.'" Mullins Coal Co. v. Director, OWCP, 484 U.S. 135, 159 (1987) (citing Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945)); see Doss v. Director, OWCP, 53 F.3d 654, 658 (4th Cir. 1995) (citing and applying Mullins). This rule of deference applies to an interpretation contained in a brief, including the brief that the OWCP Director filed in the instant case. See, e.g., Auer v. Robbins, 519 U.S. 452, 461-62 (1997). As our discussion above makes clear, we find the OWCP Director's interpretation to be neither plainly erroneous nor inconsistent with the regulation.

[29]The draft regulation would have defined documentary evidence as "evidence relevant to operator liability as well as all medical evidence relevant to a claimant's eligibility[.]"

13

proposal would end the then-current practice of delaying the development of evidence on both issues until the OALJ stage. Id.

Eventually, the DOL decided not to require all medical eligibility evidence to be submitted to the district director. Id. at 79990. The DOL did, however, implement its proposal with respect to liability evidence. This decision is clearly stated in the Federal Register: "Any such evidence that was not submitted to the district director could be submitted to the ALJ only upon a showing of extraordinary circumstances." Id.

As the Federal Register explains, serious disputes about the identity of the responsible operator arise in fewer than ten percent of all claims. Id. at 79989; 79991; 79999-80000. When such disputes do arise, however, the DOL expressly intended to resolve them at the district director stage. Id. The district director is required to select one and only one responsible operator, and he is "permitted to refer a case to the [OALJ] with only one designated responsible operator as a party to the claim." Id. at 79990.

It is important that the district director make the right decision. In the event that the operator he designates is later adjudicated not liable, the Fund will pay any benefit award. Id. There is no remand. Id.

The Federal Register devotes considerable space to explaining that under the 2000 changes the district director's initial

14

determination is unassailable even if wrong.  Id.  "The Department intends that once a claim is referred to the [OALJ], the Department shall not be able to impose liability for that claim on any operator other than the one formally designated by the district director, whether through remand by the [ALJ] or through a modification of a finally awarded claim."  Id.

For these reasons, the DOL obliged operators to develop liability evidence at the district director stage, the earliest stage of claims processing.  Id. at 79999-80000.  Operators must "submit evidence regarding their [own] potential liability for the claim."  Id. at 79999.  Moreover, they must develop and submit "*any* evidence relevant to the liability of another party."  Id. (emphasis added).  This arms the district director with sufficient information to determine accurately which operator is liable, before the case is referred to the OALJ and before all other operators are dismissed from the case.  Id. at 80000.

Given this regulatory history, it is implausible to suppose that the DOL crafted a system that deprives district directors of critical documentary evidence on the issue of liability.  Disputes over the identification of the responsible operator may be infrequent.  Nonetheless, as the facts of this case demonstrate, such disputes do arise and medical evidence can be dispositive. Under Marfork's interpretation, an operator would not be required to investigate the medical issues pertinent to liability until

15

after the liability Rubicon had been crossed. The DOL clearly did not intend such a result.

Marfork contends that the Director's interpretation would impose an unreasonable burden on mine owners. Because liability and entitlement evidence can be intertwined, Marfork argues, mine operators would be required to develop and present both types of evidence to the district director in every case. Under the Schedule, the operator is allowed only sixty days to present liability evidence to the district director. Marfork contends that this time period is insufficient because black lung cases can often be medically complex.

This argument is unpersuasive. In the DOL's experience, the identity of the responsible operator is infrequently in dispute. Thus, the operator would be required to present medical evidence to the district director in only in a small number of cases.

As to the time pressure, the sixty day time limit can be extended for good cause shown. 20 C.F.R. § 725.423. Nothing in the record suggests that district directors would deny mine operators ample time to develop relevant medical evidence pertaining to liability.

IV.

16

Marfork next argues that the ALJ committed error by finding that Marfork had not shown extraordinary circumstances. We disagree.

The ALJ carefully analyzed this issue. As he determined, Marfork was on notice that Weis may have developed complicated pneumoconiosis before 1994, when he was hired. Complicated pneumoconiosis is a progressive disease that develops over time. When Marfork hired Weis in 1994, he had been working in coal mines for other operators for decades. When Weis applied for black lung benefits, his application, which was sent to Marfork, stated that he had previously received state workers' compensation benefits for black lung disease on three occasions.[30]

At the district director stage, Weis produced evidence that he had been diagnosed with complicated pneumoconiosis.[31] Based on these and other facts, the ALJ found that Marfork had failed to

---

[30]On his application, Weis disclosed that West Virginia had awarded him state benefits in 1992, 2000, and 2002. J.A. 2.

[31]The Schedule contained Dr. Patel's diagnosis of complicated pneumoconiosis. Pursuant to the Schedule, Weis submitted the x-ray readings by Drs. Parker and Proto. Dr. Parker's report explicitly stated that his examination of the x-rays dated 1971, 1974, 1980, 1996, 1999, 2000, and 2003 revealed "advanced dust related disease - progressive massive fibrosis," which was seen in 1996, 1999, 2000, 2003, and which "has progressed [from] 1996 [to] 2003." J.A. 14.

17

develop evidence clearly suggesting that another operator might be liable. On appeal, the Board agreed.[32]

We find nothing in the record to disturb the ALJ's conclusion. Marfork did not begin investigating the case until the ALJ stage. When Dr. Crisalli all but confirmed the diagnosis of complicated pneumoconiosis, Marfork belatedly sprang into action, scouring hospitals for medical records and ultimately tracking down the crucial 1992 x-ray. J.A. 354; 364. Extraordinary circumstances might exist if the x-ray were hidden or could not have been located at the district director stage. Such is not the case here. The x-ray was waiting to the found. Accordingly, we affirm the ALJ's finding that Marfork failed to show extraordinary circumstances.

V.

Marfork makes two additional arguments, each of which we need address only briefly.

---

[32]In affirming the ALJ's decision, the Board correctly noted that Marfork never provided any explanation to the ALJ why it had failed to develop its evidence at the district director stage. J.A. 397.

A.

In the Act, Congress stated its intent to impose liability only on the responsible operator.[33]  Based on the 1992 x-ray, it now appears that Weis contracted complicated pneumoconiosis while employed by another mine operator.[34]  In light of this discovery, Marfork contends that holding it liable would violate the intent of Congress.

This argument fails because it relies on evidence that was properly excluded from the record.  The department has the authority to write regulations governing the orderly litigation of black lung cases.  Those regulations presume that the operator who last employed the miner for more than a year is responsible.[35] Operators are provided a fair chance, however, to introduce exculpatory evidence into the record.  Marfork missed its chance. Because the medical evaluations of the 1992 x-ray were not presented to the district director, the evidence Marfork relies upon is outside the record.  For purposes of this litigation it does not exist. Based on the properly admitted administrative

---

[33]Marfork cites § 932 of the Act, which provides that coal mine operators are responsible for paying benefits to miners whose death or total disability due to black lung disease arose out of employment in the operator's mine.

[34]Marfork avers that Weis's employer in 1992, Maben Energy Corporation, went bankrupt, and that this is a case where the Fund should be liable for benefits.  See 20 C.F.R. § 725.495(a)(4).

[35]20 C.F.R. § 725.495.

19

record, Marfork is the responsible operator and the intent of the Act has not been violated.

B.

Marfork next faults the ALJ for failing to admit the 1992 medical evidence for the purpose of establishing the date of onset of Weis's complicated pneumoconiosis. In order to properly compensate Weis for his injuries, Marfork contends, a remand is necessary to consider the newly discovered evidence. Because the ALJ would necessarily consider the 1992 evidence to establish date of onset, Marfork asserts that it would be irrational to ignore the same evidence for the purpose of imposing liability.

Weis's entitlement to benefits, however, is an issue for Weis - not Marfork - to raise. Indeed, Weis has attempted to challenge the ALJ's date of onset determination before this Court.[36] He is precluded from doing so, however, by the doctrine of administrative waiver. Although named as a respondent when Marfork appealed the ALJ's liability determination to the Board, Weis failed to challenge the ALJ's subsidiary conclusion establishing month of onset. Weis filed no brief and declined to appear at oral argument before the Board. J.A. 335; 386. Accordingly, he has waived his

---

[36]See Resp't's Br. at 2. ("The [Board] erred only in confirming the ALJ's determination that the onset of permanent disability in this case was April 1, 1996.")

20

entitlement argument for consideration by this Court.[37] <u>See</u> <u>Beth Energy Mines v. Cunningham</u>, 104 F. Appx. 881 (4th Cir. 2004) (Employer waived statute of limitations objection by failing to present it to Board); <u>Armco, Inc. v. Martin</u>, 277 F.3d 468, 476 (Declining, on grounds of administrative waiver, to address arguments not presented to Board).

## VI.

We conclude that the Board correctly determined that medical evidence offered only to disprove liability constitutes "documentary evidence" within the meaning of § 725.456(b)(1). We also conclude that the Board properly affirmed the exclusion of Marfork's medical evidence from the administrative record. Accordingly, we affirm the Board's decision and deny Marfork's petition for review.

<u>AFFIRMED</u>

---

[37]In addition, Weis's attempt to appeal to this Court is barred by the regulations governing proceedings before the Board. Once Marfork appealed the ALJ's liability determination, Weis, as a prevailing party, was required to file a cross-appeal in order to alter or amend the result of the proceedings before the ALJ. <u>See</u> 20 C.F.R. § 802.201(a)(2); <u>King v. Tennessee Consolidated Coal Co.</u>, 6 BLR 1-87 (Ben.Rev.Bd. 1983)(Cross-appeal required where "prevailing party" seeks to alter judgment below); <u>accord</u> <u>Malcomb v. Island Creek Coal Co.</u>, 15 F.3d 364, 369 (Argument made without cross-appeal must support ALJ's decision, but not necessarily his reasoning). Although Weis's entitlement argument would have precisely this effect, he declined file a cross-appeal to the Board. Having failed to comply with the Board's regulations, Weis is therefore precluded from objecting to the ALJ's conclusion establishing date of onset.

21

WILLIAMS, Chief Judge, dissenting:

The regulations governing applications for benefits under the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C.A. §§ 901-945 (West 2007) ("the Black Lung Benefits Act" or "the Act"), set forth detailed requirements governing the development of evidence at each stage of the administrative process through which such claims are adjudicated. Among these provisions is 20 C.F.R. § 725.456(b)(1), which provides as follows:

> Documentary evidence pertaining to the liability of a potentially liable operator and/or the identification of a responsible operator which was not submitted to the district director shall not be admitted into the hearing record in the absence of extraordinary circumstances. Medical evidence in excess of the limitations contained in § 725.414 shall not be admitted into the hearing record in the absence of good cause.

20 C.F.R. § 725.456(b)(1) (2007). The majority arrives at its interpretation of § 725.456(b)(1) by taking the phrase "[d]ocumentary evidence pertaining to [] liability" out of context and concluding that, when viewed in isolation, the regulation's reference to "[d]ocumentary evidence pertaining to [] liability" is "unqualified," ante at 12, and therefore must encompass all evidence submitted for the purpose of proving or disproving an operator's liability that is documentary in form. I disagree.

For the reasons that follow, I agree with Marfork Coal Co. ("Marfork") that the language and structure of § 725.456(b) (as well as the "regulatory history" on which the majority relies) reveal that the regulation delineates two distinct categories of

22

documentary evidence -- "medical evidence" and "evidence pertaining to the liability of a potentially liable operator and/or the identification of a responsible operator," which the Department of Labor ("DOL") did not anticipate would overlap. Moreover, cross references between the regulations make clear that the category of evidence pertaining to liability in § 725.456(b) encompasses <u>only</u> that evidence which 20 C.F.R. §§ 725.408(b) and 725.414(b) (2007) authorize parties to submit to the district director. I would therefore conclude that, because the phrase "[d]ocumentary evidence pertaining to [] liability" in § 725.456(b) references a narrow and specific category of evidence identified elsewhere in the regulations, the Benefits Review Board ("BRB") erred in construing the phrase as broadly encompassing any and all documentary evidence used to disprove liability.[1]  Accordingly, I respectfully dissent.

---

[1]The majority states that an operator may avoid liability by, among other things, "prov[ing] that it did not cause, contribute to, or aggravate the miner's pneumoconiosis" or "prov[ing] that the miner was already totally disabled by pneumoconiosis before he was hired." <u>Ante</u> at 3. These alternatives, however, are one and the same. Demonstrating that a miner was totally disabled from pneumoconiosis prior to his employment with the operator is simply one way of proving that the operator did not cause or contribute to the miner's total disability. <u>See, e.g.</u>, <u>Truitt v. N. Am. Coal Co.</u>, 2 Black Lung Rep. 1-199, 1-204/05 (1979) (reasoning that because a miner with complicated pneumoconiosis is irrebutably presumed to be totally disabled due to pneumoconiosis, coal mine employment subsequent to the development of the complicated pneumoconiosis could not contribute to the disability).

23

I.

We review the BRB's decision for errors of law and to ensure that the BRB adhered to its statutory standard of review. Dehue Coal Co. v. Ballard, 65 F.3d 1189, 1193 (4th Cir. 1995). "To that end, we undertake an independent review of the record, as in the place of the BRB, to determine whether the ALJ's factual findings were based upon substantial evidence in the record." Id. We review the BRB's legal conclusions de novo. Id.

Because the Director of the Office of Workers' Compensation ("the Director") administers the regulations implementing the Black Lung Benefits Act, we accord his interpretation of an ambiguous regulatory provision "substantial deference unless it is plainly erroneous or inconsistent with the regulation." Mullins Coal Co. v. Director, O.W.C.P., 484 U.S. 135, 159 (1987) (internal quotation marks omitted). In this case, however, the majority relies on the "plain language and history of the regulation," ante at 2, in embracing the Director's view, not deference to its proponent. In addition, the Director himself has asserted that because "the regulatory language is clear and unambiguous," no deference is due. (J.A. at 355.) Although I read the regulations differently than the Director, I agree that their meaning is plain. Accordingly, I too would accord no deference to the Director's interpretation.

24

As with the interpretation of statutes, our interpretation of federal regulations begins with their language. See Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997) ("Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case."). Questions concerning the plainness or the ambiguity of the statutory language are resolved "by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Id. at 341; see also Ayes v. U.S. Dept. of Veterans Affairs, 473 F.3d 104, 108 (4th Cir. 2006) ("Of course, in looking to the plain meaning, we must consider the context in which the statutory words are used because we do not construe statutory phrases in isolation; we read statutes as a whole." (internal quotation marks omitted)).

The language and structure of § 725.456(b) make clear that § 725.456(b)(1)'s reference to "[d]ocumentary evidence pertaining to [] liability" does not encompass medical evidence. Section 725.456(b)(1) provides that:

> Documentary evidence pertaining to the liability of a potentially liable operator and/or the identification of a responsible operator which was not submitted to the district director shall not be admitted into the hearing record in the absence of extraordinary circumstances. Medical evidence in excess of the limitations contained in § 725.414 shall not be admitted into the hearing record in the absence of good cause.

20 C.F.R. § 725.456(b)(1). Thus, § 725.456(b)(1) sets forth separate requirements for "[d]ocumentary evidence pertaining to the liability of a potentially liable operator and/or the identification of a responsible operator" and "[m]edical evidence." Id. Section 725.456(b)(2), in contrast, provides that

> [s]ubject to the limitations in paragraph (b)(1) of this section, <u>any other documentary material, including medical reports</u>, which was not submitted to the district director, may be received in evidence subject to the objection of any party, if such evidence is sent to all other parties at least 20 days before a hearing is held in connection with the claim.

Id. § 725.456(b)(2) (emphasis added). In § 725.456(b)(2), the DOL did not leave it to the reader to assume that "any other documentary material" could include medical reports. Instead, that subsection explicitly states that the reference to documentary material included medical reports. Applying the rule of statutory construction <u>expressio unius est exclusio alterius</u> ("the expression of one thing implies the exclusion of another"), the omission of a reference to medical evidence in § 725.456(b)(1)'s pronouncement regarding "[d]ocumentary evidence pertaining to liability" is properly understood as an exclusion of that evidence. See <u>Ayes</u>, 473 F.3d at 110-11 ("The time-honored maxim <u>expressio unius est exclusio alterius</u> . . . applies with great force here."); 2A Norman J. Singer, Sutherland on Statutory Construction § 47.23 (6th ed. 2000). Thus, given the language of § 725.456(b)(2), it is clear

26

that the phrase "[d]ocumentary evidence pertaining to [] liability"
in § 725.456(b)(1) does not encompass medical evidence.

B.

Moreover, even absent the explicit language in §
725.456(b)(2), the interplay among the regulations governing the
adjudication of claims for benefits under the Black Lung Benefits
Act further demonstrates that the reference to "[d]ocumentary
evidence pertaining to [] liability" in § 725.456(b)(1) is not an
unqualified phrase encompassing all evidence having any bearing on
an operator's liability. As explained below, that phrase merely
references specific evidence identified elsewhere in the regulatory
scheme.

The DOL's regulations detail the mechanism through which an
operator's liability and a claimant's entitlement to benefits are
established. With regard to liability, the district director first
uses the information provided in an applicant's claim form to
identify one or more potentially liable operators and sends those
operators a notice of claim. 20 C.F.R. § 725.407 (2007). An
operator receiving such a notice has thirty days within which to
file a response "indicating its intent to accept or contest its
identification as a potentially liable operator." 20 C.F.R. §
725.408(a)(1) (2007). If the operator contests its identification,
it must, "on a form supplied by the district director, state the
precise nature of its disagreement by admitting or denying each of

27

[the five] assertions" listed in 20 C.F.R. § 725.408(a)(2). 20 C.F.R. § 725.408(a)(2). The five assertions in § 725.408(a)(2) relate only to the operator's employment of the claimant and ability to make payments.[2] The operator "may submit documentary evidence in support of its position" within 90 days of the date on which it received the notice of claim. 20 C.F.R. § 725.408(b)(1). An operator that does not submit documentary evidence relevant to the five assertions in § 725.408(a)(2) within the 90-day period is precluded from introducing the evidence at a later date. 20 C.F.R. § 725.408(b)(2) ("No documentary evidence relevant to the grounds set forth in [§ 725.408(a)(2)] may be admitted in any further proceedings unless it is submitted within the time limits set forth in this section.").

After receiving the responses and evidence submitted pursuant to § 725.408, the district director designates a "responsible operator" liable for the payment of benefits and issues a schedule

---

[2]Specifically, the five assertions that the operator must admit or deny are:
>   (I) That the named operator was an operator for any period after June 30, 1973;
>   (ii) That the operator employed the miner as a miner for a cumulative period of not less than one year;
>   (iii) That the miner was exposed to coal mine dust while working for the operator;
>   (iv) That the miner's employment with the operator included at least one working day after December 31, 1969; and
>   (v) That the operator is capable of assuming liability for the payment of benefits.
20 C.F.R. § 725.408(a)(2) (2007).

28

for the submission of additional evidence.  20 C.F.R. § 725.410 (2007).  The schedule must allow the parties "not less than sixty days within which to submit additional evidence, including evidence . . . relevant to the liability of the designated responsible operator."  20 C.F.R. § 725.410(b).  This additional evidence must, however, "meet the requirements set forth in § 725.414 in order to be admitted into the record."  20 C.F.R. § 725.410(b).

Section 725.414, in turn, contains separate subsections entitled "medical evidence" and "evidence pertaining to liability." See 20 C.F.R. § 725.414(a),(b).[3]  The subsection addressing evidence pertaining to liability, § 725.414(b), provides that "[e]xcept as provided by § 725.408(b)(2), the designated responsible operator may submit evidence to demonstrate that it is not the potentially liable operator that most recently employed the claimant."  20 C.F.R. § 725.414(b)(1).  Thus, the only "evidence pertaining to liability" that § 725.414 permits a designated responsible operator to submit to the district director is evidence that (1) demonstrates that it is not the potentially responsible operator that most recently employed the claimant, and (2) does not go to the five assertions in § 725.408(a)(2).  See 20 C.F.R. §§ 725.408(b)(2), 725.414(b)(1).  Section 725.414 does not authorize

---

[3]Section 725.414 distinguishes between documentary evidence and testimony.  Section 725.414(a) & (b) apply only to documentary evidence.  Section 725.414(c) addresses testimony.  See 20 C.F.R. § 725.414 (2007).

29

the designated responsible operator to submit any other type of evidence pertaining to liability.

Pursuant to § 725.414(d), parties must submit the "evidence pertaining to liability" detailed in § 725.414(b) within the time period allotted in the schedule set by the district director; it cannot be introduced into the record at a later stage of the proceedings. See 20 C.F.R. § 725.414(d). Section 725.414(d) does not apply to medical evidence submitted in accordance with § 725.414(a). In addition, § 725.414(d)'s limitation on the submission of evidence pertaining to liability is not absolute -- it excepts evidence admissible under §§ 725.456 and 725.310(b). 20 C.F.R. § 725.414(d) ("Except to the extent permitted by § 725.456 and § 725.310(b), the limitations set forth in this section shall apply to all proceedings conducted with respect to a claim, and no documentary evidence pertaining to liability shall be admitted in any further proceeding conducted with respect to a claim unless it is submitted to the district director in accordance with this section.").[4]

Accordingly, evidence pertaining to liability that is admissible under § 725.414(b) may be submitted after a case has

_____

[4]Section 725.310(b) addresses the submission of additional medical evidence in modification proceedings (proceedings in which the district director may reconsider the terms of an award or the denial of benefits), and has no applicability to the introduction of liability evidence while a claim is before the ALJ. See 20 C.F.R. § 725.310(b) (2007).

been transferred from the district director to the Office of Administrative Law Judges (ALJs) only if it falls within an exception contained in § 725.456. One such exception is § 725.456(b)(1), the provision discussed in Part A, which allows the admission into the hearing record of "[d]ocumentary evidence pertaining to liability" that was not submitted to the district director in "extraordinary circumstances." 20 C.F.R. § 725.456(b)(1) (stating that "[d]ocumentary evidence pertaining to the liability of a potentially liable operator which was not submitted to the district director shall not be admitted into the hearing record in the absence of extraordinary circumstances").

Thus, contrary to the majority's view, § 725.456(b)(1) does not represent an independent requirement governing a category of "evidence pertaining to [] liability" broader than or otherwise different from the "evidence pertaining to liability" described in §§ 725.408(b) and 725.414(b). It simply places a qualified limitation on the parties' ability to introduce to the ALJ evidence that they could have submitted to the district director pursuant to §§ 725.408(b) and 725.414(b).

C.

Contrary to the majority's assertion, the comments to the regulations governing the adjudication of claims for Black Lung benefits do not countenance an expansive interpretation of § 725.456(b)(1). To the contrary, an examination of these comments

31

further demonstrates that the DOL intended to allow potentially liable operators to defer the development of medical evidence until after a case was referred to the Office of ALJs.

The majority correctly notes that when the DOL revised the regulations in 2000, it sought to streamline the processing of claims. Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, as Amended, 65 Fed. Reg. 79920, 79990 (Dec. 20, 2000). To this end, the revised regulations prohibit remand to the district director for the designation of a new responsible operator in the event that the ALJ determines the district director erred in its original selection. Id. at 79986. This restriction reduces delay in the adjudication of claims but also "places the risk that the district director has not named the proper operator on the Black Lung Disability Trust Fund [(the "Fund")]." Id.

The Director argues that the DOL proved willing to place this risk on the Fund because the DOL believed that the regulations governing evidence pertaining to liability would provide the district director with the information necessary to designate the correct responsible operator and avoid subjecting the Fund to unwarranted liability. The majority accepts this contention, and reads the Federal Register commentary as evincing the DOL's belief that, in revising the regulations, it had provided for the submission of all evidence relevant to liability to the district director. That the DOL sought to provide the district director

32

with all of the information necessary to correctly identify responsible operators, however, does not mean that the regulations the DOL enacted in fact accomplished this goal.

In support of its view, the majority seizes on fragments of the commentary stating that operators must "submit evidence regarding their potential liability for the claim" and that the regulations require the "submission of any evidence relevant to the liability of another party during the district director's claims processing." Id. at 79999. To be sure, the comments do indicate that "the evidentiary limitations of §§ 725.408 and 725.414 are designed to provide the district director with all of the documentary evidence relevant to the determination of the responsible operator liable for the payment of benefits." Id. at 79976.[5] The DOL's belief that it had identified all of the documentary evidence relevant to an operator's liability and provided for its submission to the district director pursuant to §§

---

[5]The comments, like the regulations, recognize two types of evidence relevant to liability "(1) [d]ocumentary evidence relevant to an operator's identification as a potentially liable operator, governed by § 725.408; and (2) documentary evidence relevant to the identity of the responsible operator, governed by § 725.414 and 725.456(b)(1)." Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, as Amended, 65 Fed. Reg. 79920, 79976 (Dec. 20, 2000). The comments also describe the two types of evidence. With regard to the documentary evidence relevant to the identity of the responsible operator, they state that, "[u]nder § 725.414, an operator may submit documentary evidence to prove that a company that more recently employed the miner should be the responsible operator." Id. They do not, however, reference any other evidence as potentially relevant to liability.

33

725.408 and 725.414, however, has no bearing on whether § 725.456 properly can be construed as creating an independent requirement that operators submit medical evidence bearing on liability to the district director.[6]

Moreover, the commentary explicitly states that the revised regulations "permit parties to maintain their current practice of deferring the development of medical evidence until after a case had been referred to the Office of Administrative Law Judges." Id. at 79984. The DOL addressed the anticipated costs of compliance with the revised regulations in some detail, explaining that "while potentially liable operators [would] be required to develop evidence relevant to their liability while claims [were] pending before district directors, they [would] no longer need to expend money on the development of medical evidence in those cases . . . that do not proceed beyond the district director level." Id. Accordingly, "in the small number of cases in which the Department [did] not name the miner's most recent employer as the responsible

_____

[6]The DOL may have overlooked this possibility because cases in which medical evidence is relevant to the identification of the responsible operator are rare. Medical evidence is irrelevant in cases involving simple pneumoconiosis, and these cases account for the majority of claims under the Act. And, as the Director has acknowledged, complicated pneumoconiosis cases in which liability is disputed are rare. Rarer still are cases in which a miner is presumed totally disabled from complicated pneumoconiosis but works for several more years before filing for benefits. Moreover, even in these unusual circumstances, the claimant would ordinarily seek out evidence relevant to the onset date of his complicated pneumoconiosis in order to obtain the full amount of benefits available under the Act.

34

operator," the earlier employer might "incur additional costs in attempting to establish that a more recent employer should be held liable for the payment of benefits." Id. The DOL believed, however, that "[i]n comparison to the costs of developing medical evidence . . . the additional costs imposed by the regulations [would] not be significant." Id. Thus, the comments reveal that the DOL intended the revised regulations to allow operators to defer the development of medical evidence until the case reached the ALJ.

### D.

In sum, the language and structure of 20 C.F.R. § 725.456(b) itself, the interplay among the regulations governing the development of evidence at each stage of the administrative process, and the Federal Register comments to the regulations make clear that § 725.456(b) differentiates between "medical evidence" and "evidence pertaining to liability." These sources also reveal that whether a particular piece of documentary evidence constitutes medical evidence or evidence pertaining to liability depends on what the evidence is, not the purpose for which it is offered. Only evidence relevant to the five assertions in § 725.408(a)(2) and evidence demonstrating that an operator was not the potentially liable operator that most recently employed the claimant constitutes "evidence pertaining to liability" within the meaning of §§ 725.414(b)&(d) and 725.456(b)(1). The evidence that Marfork

35

sought to introduce to the ALJ -- interpretations of a 1992 x-ray demonstrating that Weis suffered from complicated pneumoconiosis prior to his employment with Marfork -- was neither. Accordingly, the BRB erred in concluding that § 725.456(b)(1) precluded the introduction into the record of the 1992 x-ray interpretations.[7]

## II.

In sum, I believe that the BRB erred in concluding that medical evidence may constitute "evidence pertaining to [] liability" within the meaning of § 725.456(b)(1). I would

---

[7] I also wish to note that, even were I to agree with my colleagues' interpretation of § 725.456(b), I would be inclined to find that submission of the 1992 x-ray before the Administrative Law Judge ("ALJ") was proper because § 725.456(b)(1) permits submission of documentary evidence to the ALJ in extraordinary circumstances. Given that the comments to the regulations indicate that the regulations "permit parties to maintain their current practice of deferring the development of medical evidence until after a case had been referred to the Office of Administrative Law Judges," 65 Fed. Reg. at 79984, and promise that the regulations will not be a trap for the unwary litigant, see Fed. Reg. at 79986 (rejecting such criticism because "the nature of the evidence required . . . and the time limits for submitting that evidence, are clearly set forth in the regulations, and will be communicated to potentially liable operators who are notified of a claim by the district director"), it seems unduly harsh to presume Marfork had notice that it needed to present the 1992 x-ray to the district director.

Moreover, in this case, permitting Marfork to introduce the 1992 x-ray would not have worked prejudice upon the Fund. The record instead reveals that Weis's employer in 1992, Maben Energy Co., went bankrupt while self-insured and that its liability transferred to the Fund. See C.F.R. § 725.495(a)(4)(2007). Thus, the Fund would have been liable in any event and, if anything, is now receiving a windfall in that a demonstrably innocent operator is left to provide Weis's benefits.

therefore reverse the BRB's determination that the ALJ properly ignored the 1992 x-ray interpretations in adjudicating Marfork's liability for Weis's Black Lung benefits and remand for further proceedings.  Accordingly, I respectfully dissent.